IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

AMIE L. M.,

                    Plaintiff,

          v.                                  Civil Action No.
                                              5:21-CV-0750 (DEP)


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

───────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     ANDREW FLEMMING, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                LUIS PERE, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

───────────────────

[1]      This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in May of 1976, and is currently forty-six years of age.  She was forty-one years old on April 5, 2018, the date on which she filed her application.  Plaintiff stands five feet and seven inches in height, and weighed approximately one hundred and fifty pounds during the relevant time period.  Plaintiff lives in a mobile home with her boyfriend in Parish, New York.

In terms of education, plaintiff completed the twelfth grade and graduated from high school.  While in school, plaintiff received special education services to address a learning disability.  She has worked in the past as a kennel assistant at an animal shelter, a breakfast attendant at a hotel, a laborer at a dry cleaner, and a sales clerk at a Halloween store.

Physically, plaintiff alleges that she suffers primarily from gastrointestinal impairments, including digestive disease with diarrhea and constipation, Barrett's esophagus, a hiatal hernia, acid reflux disease, and gastritis, as well as right hip pain.  She received treatment for these impairments during the relevant period primarily from Dr. Sara Mitchell and other sources from Gastroenterology and Hepatology of Central New York, and sources at St. Joseph's Hospital, as well as through physical therapy. Plaintiff additionally alleges that she suffers from mental impairments including attention deficit hyperactivity disorder ("ADHD"), learning difficulties, dyslexia, and anxiety, and was treated for her anxiety during the relevant period with sources at St. Joseph's Hospital.

Plaintiff alleges that she is significantly limited as a result of her chronic gastrointestinal symptoms and mental impairments.  Activities like driving, reaching with her right hand, moving her upper body, and holding weight cause pain because of her hernia.  This impacts her ability to do household chores, use a computer, do dishes, and wash her hair.  Plaintiff also experiences gastroparesis, for which she follows a special diet, and which causes vomiting and incontinence.  She reports that she vomits three or four times each week, experiences incontinence at least once per week, and that she needs to use the bathroom at least twenty times per day.

Because of her upper gastrointestinal issues, plaintiff has to sleep with her torso elevated, which causes her to sleep poorly, and she reports that she is often fatigued and experiences memory and concentration difficulties because of her sleep difficulties.  Plaintiff also reports that her hip bursitis, with symptoms including pain, numbness, tingling and falls, limits her, and that she does not shop alone, does not carry or put away groceries, and needs help doing laundry.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social Security Act on April 4, 2018.[2]  In support of her application, she claimed to be disabled due to ADHD, a learning disability, dyslexia, anxiety, digestive disease, Barrett's esophagus, a hiatal hernia, acid reflux disease, and gastritis.

A hearing was conducted on November 20, 2019, by ALJ Melissa Hammock to address plaintiff's application for benefits.  ALJ Hammock issued an unfavorable decision on January 16, 2020.  That opinion became a final determination of the agency on April 26, 2021, when the Social

---

[2]    Plaintiff had filed a concurrent application for Title II disability insurance benefits, but subsequently withdrew that application.  Only plaintiff's SSI application is therefore at issue in this appeal.

4

Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

B.     The ALJ's Decision

In her decision, ALJ Hammock applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff had not engaged in substantial gainful activity during the relevant period.  Proceeding to step two, ALJ Hammock found that plaintiff suffered from severe impairments that impose more than minimal limitations on her ability to perform basic work functions during the relevant period, including a hiatal hernia, Barrett's esophagus, gastritis, trochanteric bursitis of the right hip, sciatica, generalized anxiety disorder, a specific learning disorder, a mood disorder, and ADHD.

At step three, ALJ Hammock examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions did not meet or medically equal any of those listed conditions, specifically considering Listings 1.02, 6.00, 12.04, 12.05, and 12.06.

ALJ Hammock next surveyed the available record evidence and concluded that, during the relevant time period, plaintiff retained the

residual functional capacity ("RFC") to perform a less than a full range of light work with the following additional restrictions:

> she can only occasionally stoop, kneel, crouch, climb ramps, and climb stairs, and she can never crawl or climb ladders, ropes, or scaffolds. She can frequently handle and finger with the non-dominant right upper extremity, and she can have no exposure to workplace hazards. The claimant can perform simple, routine tasks in a work environment with no production rate pace and no more than occasional changes in the work routine, and she can have occasional interaction with supervisors, coworkers, and the public.

ALJ Hammock found at step four that, with the above RFC, plaintiff is unable to perform any of her past relevant work.  Proceeding to step five, the ALJ elicited the testimony of a vocational expert regarding how plaintiff's limitations would impact her ability to perform other work in the national economy and concluded, in light of the vocational expert's testimony, that plaintiff remains able to perform work available in the national economy, citing as representative positions small products assembler, electronics sub-assembler, and injection molding machine tender.  Based upon these findings, ALJ Hammock concluded that plaintiff was not disabled during the relevant period.

C.    <u>This Action</u>

Plaintiff commenced this action on June 30, 2021.[3]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ's RFC finding is unsupported by substantial evidence in that (1) the ALJ erred in formulating the mental RFC finding based on her own lay assessment of the evidence despite purportedly relying on the less restrictive opinion of consultative examiner Dr. Corey Anne Grassl, (2) the ALJ's assessment of the physical RFC was also not supported by substantial evidence because the ALJ found both of the relevant opinions to be unpersuasive and she inappropriately "split the difference" between those two opinions without indicating the basis for her findings, and (3) the ALJ failed mention plaintiff's hip impairment in her analysis of the RFC, despite finding that impairment to be severe.  Dkt. No. 13.

Oral argument was conducted in this matter, by telephone, on August 30, 2022, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

---

[3]      This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Commissioner is subject to a "very deferential" standard of review, and is

limited to analyzing whether the correct legal standards were applied, and

whether the decision is supported by substantial evidence.  *Brault v. Soc.*

*Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d

Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there

is reasonable doubt as to whether the ALJ applied the proper legal

standards, the decision should not be affirmed even though the ultimate

conclusion reached is arguably supported by substantial evidence.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the

correct legal standards have been applied, and the ALJ's findings are

supported by substantial evidence, those findings are conclusive, and the

decision will withstand judicial scrutiny regardless of whether the reviewing

court might have reached a contrary result if acting as the trier of fact.

*Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.

1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.*

8

*Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff's arguments in this case center upon the ALJ's evaluation of the various medical opinions in the record.  Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding the evaluation of opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), .

11

. . including those from your medical sources," but rather will consider

whether those opinions are persuasive by primarily considering whether the

opinions are supported by and consistent with the record in the case.  20

C.F.R. § 404.1520c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at

*5853 (stating that, in enacting the new regulations, the agency was

explicitly "not retaining the treating source rule").  An ALJ must articulate in

his or her determination as to how persuasive he or she finds all of the

medical opinions and explain how he or she considered the supportability[4]

and consistency[5] of those opinions.  20 C.F.R. § 404.1520c(b).  The ALJ

also may – but is not required to – explain how he or she considered the

other relevant enumerated factors related to the source's relationship with

the claimant, including the length of any treatment relationship, the

frequency of examinations by the source and the purpose and extent of the

treatment relationship, whether the source had an examining relationship

---

[4]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[5]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 404.1520c(c).

      1.    <u>The ALJ's Assessment of Plaintiff's Mental Impairments</u>

Plaintiff argues that the ALJ's RFC finding regarding her mental functioning is not supported by substantial evidence because that finding is inconsistent with the opinions from consultative examiner Dr. Corey Anne Grassl and nonexamining state agency psychiatric consultant Dr. M. Juriga, despite the ALJ's indication that she found those opinions to be generally or somewhat persuasive.  Dkt. No. 13, at 11-13.  Plaintiff appears to argue that, because the ALJ did not actually rely on either of these opinions, she improperly based her finding on her own lay interpretation of raw medical data, something which, she argues, is particularly erroneous because the record contains indications that plaintiff presented as confrontational or reacted poorly on a number of occasions with providers.  *Id.*

Plaintiff's argument regarding the opinion evidence is somewhat puzzling, given that the ALJ ultimately found that she was more limited than did either of the sources who provided a medical opinion concerning her mental functioning.  As plaintiff acknowledges, state agency psychiatric consultant Dr. Juriga found on initial review that plaintiff's mental disorders

imposed no more than mild limitations in any area of functioning, and therefore were not severe.  AT 82.  Similarly, Dr. Grassl, after conducting an examination during which plaintiff was observed to be irritable with a poor manner of relating, opined that plaintiff had mild or no limitation in all of the assessed areas other than a moderate limitation in her ability to interact with others.  AT 768-70.

In her decision, the ALJ found that plaintiff's various mental impairments qualify as severe impairments, and limited her to performing simple, routine tasks in a work environment with no production rate pace and no more than occasional changes in work routine, and occasional interaction with supervisors, coworkers, and the public.  AT 17.  In reaching this conclusion, the ALJ found Dr. Grassl's opinion to be generally persuasive, but noted that some inconsistencies and the author's use of vague terminology militated against wholesale adoption, and that her opinion failed to account fully for plaintiff's documented ability to respond to stress.  AT 21.  The ALJ also found Dr. Juriga's opinion to be only somewhat persuasive because that source did not have an opportunity to review much of the evidence in the record, including later records that showed greater mental functioning issues.  AT 21.

The ALJ therefore provided detailed explanations for the extent to

which she found both of these opinions to be persuasive, and, contrary to plaintiff's argument, her RFC finding is wholly consistent with those explanations.  Notably, the ALJ accounted for the moderate limitation in interacting with others opined by Dr. Grassl, but ultimately found that the record as a whole indicated that plaintiff is *more* limited in other areas of functioning than was opined by Dr. Grassl.  Because the record from 2019 indeed documents greater symptoms in handling stress than were apparent from Dr. Grassl's one-time examination, it was not error for the ALJ to find plaintiff to be more limited than any physician opined.

To the extent that plaintiff argues that the ALJ was required to find her more limited as to her ability to interact with others than was found in the RFC determination, which limits plaintiff to occasional interaction with supervisors, coworkers and the public, based on notations from treatment records that she was occasionally confrontational or reacted poorly during examinations as a result of her mental impairments, I note not only that such argument is not supported by any medical opinion, but also that the ALJ considered the relevant treatment evidence and concluded that the record overall supported her finding of plaintiff's ability to occasionally interact with others.  Notably, the record indicates that plaintiff's mental impairments presented problematically particularly between mid-January

and early March of 2019.  On January 17, 2019, a provider at St. Joseph's noted that, although plaintiff's anxiety symptoms were stable and she would be continued on diazepam, it was suspected she might have a bipolar condition for which the provider wanted to try treatment, but plaintiff was adverse to adding any new medications at that time.  AT 968.  She was observed to have a normal mood, affect, behavior, judgment and thought content, although her speech was rapid and/or pressured.  AT 969-70.  A month later, plaintiff presented to a different provider at St. Joseph's expressing that she was upset because her disability paperwork had not been handled in a manner that was satisfactory to her in the past, and became more agitated and left the exam room when told she would likely need to schedule an additional appointment to discuss her disability paperwork because the provider was unable to address all of her concerns at a single visit.  AT 963-64.

A short time later, on February 27, 2019, plaintiff presented to yet another provider at St. Joseph's and became upset, defensive, and combative when that provider asked her what condition she takes valium for, ranting about not believing in psychiatry and that her anxiety medications would cause her gastroparesis to turn into cancer, after which she "stomp[ed]" out of the office without being examined.  AT 958-59.

16

Approximately a week following that appointment, on March 7, 2019, plaintiff then presented to CPEP after two visits to the emergency room on the same day related to a panic attack, at which time it was noted that she was going through diazepam withdrawal after quitting that medication without tapering.  AT 914, 917-18. Notably, there do not appear to be any further indications of combativeness or similar behavior following plaintiff's CPEP visit.

Although these records certainly document that plaintiff has some difficulties in handling stress and interacting with others, I cannot say that the ALJ has failed to account for the level of limitation generally described by the record.  Plaintiff's argument that this evidence should be interpreted as showing she is unable to interact with others at all in a work setting represents merely a request for the court to reweigh the evidence. Concluding that the ALJ's assessment of the evidence in the decision is thorough, thoughtful, and reasonable, I find that her mental RFC finding is supported by substantial evidence, and remand is not warranted on that basis.

2.   The ALJ's Assessment of Plaintiff's Physical Impairments

Plaintiff also argues that the ALJ's RFC determination regarding her physical functioning is not supported by substantial evidence, contending

specifically that (1) the ALJ did not properly assess the opinion from gastroenterologist Dr. Sara Mitchell because her findings regarding supportability and consistency are flawed, (2) the ALJ inappropriately "split the difference" between the opinions of Dr. Mitchell and Dr. Kalyani Ganesh by formulating an RFC in between the levels of limitations opined by those two providers without supporting that finding with substantial evidence, and (3) the ALJ failed to mention plaintiff's hip issues in her analysis of the opinion evidence, despite finding her trochanteric bursitis to be a severe impairment. Dkt. No. 13, at 13-15.

In September of 2018, treating gastroenterologist Dr. Sara Mitchell noted in a form titled "Medical Source Statement" that plaintiff has diagnoses of Barrett's esophagus, gastroesophageal reflux disorder ("GERD"), dysphagia, severe food allergies, and gastroparesis, with symptoms including daily abdominal pain and vomiting, weight loss, loss of appetite, nausea, fatigue, constipation, and bowel incontinence that occurs at least twice a week. AT 906. Dr. Mitchell opined that plaintiff's changes in position might cause worsened pain and vomiting, but that she would require a job that permits shifting positions at will. AT 907-08. She further opined that plaintiff can sit only for forty-five minutes at one time and about two hours total in an eight-hour workday, stand for one hour at a time and

for about two hours total, rarely lift or carry even less than ten pounds, occasionally climb stairs, rarely climb ladders, crouch, squat, stoop or bend, never twist, occasionally use her hands and fingers, and rarely use her arms for reaching.  AT 907-09.  Dr. Mitchell also noted that plaintiff requires ready access to a restroom and has a need to take bathroom breaks with minimal notice at unscheduled times two or three times per day for between thirty and sixty minutes each time, would be off-task twenty percent of the workday, and would likely be absent more than four days per month.  AT 908-09.  The ALJ found Dr. Mitchell's opinion to be not particularly persuasive, explaining that it is inconsistent with the evidence in the record, including Dr. Mitchell's own treatment notes, "to the point of borderline exaggeration."  AT 21-22.  The ALJ noted that the statement "does not reflect her objective findings leading up to September 2019," that gastroenterology records showed reports of "alternating diarrhea and constipation and intermittent vomiting, along with dysphagia that resolved after a dilation procedure," and that her assessments do not support the frequency indicated in her opinion, but rather indicate improvement in her vomiting and bowel movements over time such that they were only mild in 2019.  AT 21-22.

Plaintiff argues primarily that the ALJ was incorrect in finding that Dr.

19

Mitchell's opinion is not supported by her own treatment notes, asserting that those treatment notes "consistently document active symptoms . . . with an apparent ebb in symptoms from June to December 2018," but that those conditions did not resolve, and that her opinion is consistent with other emergency room and physical therapy records.  Dkt. No. 13, at 14.

As to Dr. Mitchell's treatment notes, in March of 2018, plaintiff reported she had vomited twice that week following meals of pork chops and onion rings one night and tacos the following night, and that her bowel movements were "sometimes" normal, with movements occurring every day if she had a lot of liquid and few solids.  AT 735.  In September of 2018, plaintiff reported difficulty swallowing her medications with an uncomfortable feeling or pain in her epigastric or periumbilical region and abdominal distention, vomiting, and nausea.  AT 1139.  She reported getting sick one or two times per week, that she had recently vomited in the car while taking her boyfriend to work, and that she could feel when her digestive system is slow and gets "back[ed] up."  *Id.*  She indicated she was following a gastroparesis diet but that pork and red meat caused issues, she drank Lactaid milk "all day long," and her bowel movements that day had consisted of two normal ones followed by diarrhea all day, such that she was able to eat only chicken broth.  *Id.*

In January of 2019, plaintiff reported a recent instance of vomiting after eating meatballs and garlic toast and a few occasions when her hernia acted up, but that she could eat some heavier food, and she had a fissure a few weeks earlier following a solid harsh bowel movement; it was noted that plaintiff recently had two family members die and had been exposed to a lot of people and foods, but that she was doing much better when she was following her gastroparesis diet. AT 1085. In later January, plaintiff reported experiencing a constant full feeling in the right upper quadrant of her abdomen, and that she had vomited seven times that morning before she was finally able to lie flat on her abdomen; it was noted that she had pasta with a meatball and a small salad the previous night for dinner, and a small amount of chicken with a green smoothie that morning. AT 1132. She also endorsed vomiting a few days earlier. *Id.* She further reported that she had been having bowel movements that were "halfway normal" until they started to become harder and less frequent, but the other day she had severe sudden pain and massive diarrhea with no warning. *Id.* In June of 2019, plaintiff reported that she was not struggling with bowel movements at that time and was having a bowel movement almost every day, and that this pattern persisted as long as she ate blended or soft foods, did not eat meat, and did not go out to eat, although sometimes

passing her stool is painful.  AT 1075.  She additionally reported vomiting "at times" and that she uses her prescribed medications for that. *Id.*

As to the other evidence in the record, in early February 2018, plaintiff presented to a hospital emergency room reporting uncontrolled nausea and vomiting, with several episodes of loose stool and abdominal and epigastric pain.  AT 616.  Plaintiff admitted to smoking one pack of cigarettes per week and having moderate alcohol use despite her history of hiatal hernia, esophagitis, and gastritis.  AT 622.  She was treated with fluids and antiemetics and discharged after improvement.  AT 621-22.  In May of 2018, plaintiff presented to an urgent care facility with epigastric pain with a few days of nausea, vomiting and diarrhea, which she reported was more of a soft stool.  AT 1006.

Although plaintiff is correct that she continued to experience some symptoms throughout the relevant period, none of the evidence cited in her brief undermines the ALJ's ultimate findings that the frequency of vomiting and bowel movements opined in Dr. Mitchell's opinion were not corroborated by her own treatment notes or the other evidence, and that plaintiff's condition appears to have improved to an extent throughout 2019. Specifically, plaintiff's treatment notes document that she generally experienced constipation with occasional diarrhea and that she typically

vomited one or two times per week when adherent to proper eating, which is not consistent with Dr. Mitchell's indication that plaintiff had diarrhea at least twice per week, vomiting daily, and a need for extensive unscheduled breaks to use the restroom two or three times per day.  Simply put, although the evidence certainly documents the existence of some ongoing symptoms, including abdominal pain, vomiting, and diarrhea, the ALJ's finding that Dr. Mitchell's opinion is not supported by her own treatment notes and is inconsistent with the other treatment records is based on a reasonable interpretation of all of the evidence in the record, and I see no error or failure to appropriately consider the available evidence.  As will be discussed in further detail below, the ALJ explained precisely how she accounted for the evidence of ongoing limitations to the extent established by the record.

In May of 2018, Dr. Kalyani Ganesh, after conducting an examination, opined that plaintiff has no gross physical limitations.  AT 772-74.  The ALJ found this opinion to be not particularly persuasive in that it does not accurately reflect the objective evidence in the record as a whole, including plaintiff's history of treatment for gastrointestinal impairments, and is based on a limited insight into plaintiff's functioning given that her single examination was conducted only one month after the beginning of the

relevant period. AT 21-22. Plaintiff argues that the ALJ erred in part because "it is unclear how Dr. Ganesh's opinion could have meaningfully informed the ALJ's RFC." Yet the ALJ's explanation makes perfectly clear that Dr. Ganesh's opinion did not inform the RFC, as she explicitly found it did not represent a reliable assessment of plaintiff's functioning when compared with the broader evidence in the record. AT 21-22. Because it is clear the ALJ did not rely on Dr. Ganesh's opinion, and that opinion is far less limiting than the RFC finding, there is no substance to any argument that the ALJ committed harmful error in evaluating that opinion.

Plaintiff appears to make much of the fact that the ALJ analyzed the opinions of Dr. Mitchell and Dr. Ganesh together in the same paragraph and explicitly discussed how those two opinions compared with one another. However, the fact that the ALJ noted that both of those opinions were extreme on opposite ends of the spectrum of functional ability and found neither to be persuasive does not imply that the ALJ merely assessed limitations in between those two opinions as a compromise. Such argument ignores the detailed explanation the ALJ provided in her decision regarding the way she assessed the evidence as a whole in the absence of a reliable opinion. AT 18-19. After discussing some of the treatment evidence, the ALJ provided the following summary regarding her

evaluation of plaintiff's physical limitations:

> Based on the evidence summarized above, I find it appropriate to limit the claimant to the light exertional level. This finding is consistent with the claimant's combined gastrointestinal issues, which lifting, carrying, pushing, or pulling at the medium or heavy exertional levels would predictably exacerbate due to the associated increase in internal pressure. A light exertional finding also addresses the claimant's hiatal hernia and the findings of weakness in her right hip due to bursitis and sciatica. Although there is a lack of longitudinal signs of those impairments interfering with her ambulation, the claimant's right hip issues support the finding that she can only occasionally stoop, kneel, crouch, climb ramps, and climb stairs. However, she can never crawl because of the specific weight bearing required on each hip during that postural activity, and because of the positional risk of exacerbating her hernia. The claimant's testimony about the special effects of her hernia on her non-dominant hand led me to limit her to only frequent handling and fingering with her right upper extremity despite the normal consultative examination findings and the lack of corroborating evidence in her treatment records. The claimant's nausea, vomiting, and abdominal pain persuaded me that she can never climb ladders, ropes, or scaffolds, and she can have no exposure to workplace hazards like moving machinery or unprotected heights due to the increased risk of injury should she experience those symptoms in those environments or situations. The balance issues she described at the hearing further support those total preclusions. On the other hand, the claimant's treatment records do not reflect the claimant's allegations or testimony about the frequency of her gastrointestinal issues or bathroom breaks. She described essentially daily discomfort, 20 bathroom breaks per day, constant fatigue, and vomiting despite following a gastroparesis diet. Yet

as previously discussed, the claimant's actual
treatment records indicate intermittent symptoms,
with significant improvement in 2019 with medication
compliance, a dilation procedure, and a prescribed
gastroparesis diet. As such, the objective record
does not support any greater or additional limitations
in the residual functional capacity.

AT 19.  The ALJ therefore explicitly discussed the basis in the record for

every aspect of her RFC finding, and for why certain greater limitations

were not included.  I note, parenthetically, that it is well-established in this

circuit that an ALJ need not rely on any opinion when formulating the RFC

so long as there is sufficient evidence from which he or she can make such

a determination.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8

(2d Cir. 2017) (stating that a medical source statement or opinion is not

necessarily required where the record contains sufficient evidence from

which an ALJ can assess the claimant's RFC).

Finally, plaintiff's assertion that the ALJ failed to consider her hip

impairment when assessing the opinion evidence is squarely contradicted

by the ALJ's decision.  Although the ALJ may not have specifically

mentioned that impairment in the paragraph in which she discussed the

medical opinion evidence, it is clear in the decision that she assessed the

functional impact of that impairment, and explicitly found that the two

opinions are inconsistent with the evidence in that regard.  Plaintiff's

argument on this matter fails to hold any weight.

Based on the foregoing, I find that the ALJ did not commit any error in assessing the opinion evidence regarding plaintiff's physical functioning and that her RFC finding is supported by substantial evidence.

IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 16) is GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is DENIED, the Commissioner's decision is AFFIRMED, and plaintiff's complaint is DISMISSED; and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:     September 2, 2022
           Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge